# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,    :    Case No. 3:18-cr-136
                                          Also 3:19-cv-232

                                          District Judge Thomas M. Rose
   - vs -                            Magistrate Judge Michael R. Merz

RASAUN MOCK,

        Defendant.    :

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 30). On the Court's Order, the Government has filed an Answer (Response, ECF No. 36). Despite an extension of time until November 18, 2019, to do so, Mock has not filed a reply in support (See ECF Nos.

**Litigation History**

Mock was arrested on a Complaint charging him with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and being in possession methamphetamine and fentanyl with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)(ECF No. 1). He waived indictment and agreed in a formal Plea Agreement (ECF No. 21) to plead to an

Information charging him with being a felon in possession of a firearm (ECF No. 20). The parties agreed on a disposition which included a term of imprisonment of not more than seventy months (ECF No. 21, PageID 41). After a presentence investigation, Judge Rose sentenced Mock to a below-Guidelines sixty months imprisonment (Judgment, ECF No. 28). Mock took no appeal, but filed the instant Motion to Vacate eight months later.

Mock pleads three grounds for relief:

**Ground One: Ineffective Assistance of Trial Counsel**

**Sub-claim A.** Counsel failed to object to the use of prior convictions for criminal history points. Mock claims that he was assessed criminal history points for misdemeanor convictions that are not listed (ECF No. 30, PageID 76). He further claims that there is a statute of limitations on use of prior convictions of 10-15 years. *Id.* at PageID 77.

**Sub-claim B.** Counsel failed to object to the label of the Petitioner being a felon in possession. Mock admits he was previously convicted of a felony but never informed by the probation officer of the penalty "of being in the area of a firearm (knowingly or unknowingly)." Mock claims he was unaware of the presence of the firearms he was convicted of possessing. *Id.* at PageID 78.

**Sub-claim C.** Counsel failed to consult with Petitioner after sentence concerning the appeal, including not filing the notice of appeal Mock requested.

**Ground Two: Improper Guideline Application**

(Despite directing the Court in the Motion to see the attached memorandum, guideline application is not separately argued in the Memorandum.)

**Ground Three: Newly Ruled Decision of the Supreme Court**

Relying on *Rehaif v. United States,* 139 S. Ct. 2191 (2019), Mock claims he did not know, within the meaning of that term in § 922(g), that he was a felon or that he was in possession of the firearms under the driver's seat. *Id.* at PageID 80.

# Analysis

**Scope of Relief under 28 U.S.C. § 2255**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Nichols v. United States,* 563 F.3d 240, 250 (6th Cir. 2009). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws

of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991).

Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES*,* §108 (1981). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993). In particular, collateral review under § 2255 is rarely if ever available to consider an asserted violation of the Sentencing Guidelines which could have been raised in the district court or on direct appeal. *Grant v. United States,* 72 F.3d 503 (6th Cir. 1996).

**Ground Two: Violation of the Sentencing Guidelines**

Sentencing Guideline violations are not cognizable in a Motion to Vacate. *Grant, supra*. Therefore Mock's Second Ground for Relief should be dismissed.

**Procedural Default of Directly Appealable Claims**

The United States Attorney reads Mock's Motion to Vacate as raising claims of error in two ways, substantively (or directly) or as underlying his ineffective assistance of trial counsel claims. For example, Ground One, Sub-claim A asserts trial counsel was ineffective for failing to object to use of misdemeanor convictions for assessing criminal history points. That can be read as a direct claim of trial court error or as underlying the ineffectiveness claim.

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761(6th Cir. 2013), *quoting Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray, supra*, citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

Mock took no appeal in this case, so he has procedurally defaulted all of those claims which he could have raised on direct appeal but did not, unless he can show excusing cause and prejudice or actual innocence. Mock does not make a claim of actual innocence as that phrase is understood in *Bousley*, i.e., factual innocence proven by new evidence not presented at trial. See *Schlup v.*

*Delo,* 513 U.S. 298 (1995); *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005). Therefore he must rely on proving ineffective assistance of trial counsel to excuse his default. To the extent he has not shown ineffective assistance of trial counsel, he has procedurally defaulted on the underlying direct claims and they must be dismissed.

**Ineffective Assistance of Counsel**

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's

> conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A federal defendant does not procedurally default a claim of ineffective assistance of trial counsel by failing to raise it on direct appeal even if it could have been raised and decided there. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999). This is because of the preference of the Supreme Court and then Sixth Circuit for presentation of ineffective assistance of trial counsel claims in a Motion to Vacate.

Mock's underlying substantive claims must be evaluated, however, to determine whether it was ineffective assistance of trial counsel to fail to raise them. It cannot be ineffective assistance to fail to raise a claim which would not have been successful.

In Sub-claim A, Mock asserts counsel was ineffective for failing to object to the use of misdemeanor convictions in assessing criminal history points and in failing to object to the use of convictions occurring earlier than what he refers to as the "statute of limitations."

The Magistrate Judge has examined the Presentence Investigation Report and finds that the first prior conviction on which points was assessed was Mock's conviction in the Montgomery County Court of Common Pleas in its Case No. 05CR4295 for having weapons under disability, a felony for which Mock received a three-year sentence of imprisonment and for which he was assessed three criminal history points. This assessment is accurate because Mock was imprisoned more than thirteen months and the sentence expired less than fifteen years before the offense of which he was convicted in this case. He was assessed one point each for his convictions for public indecency, minor misdemeanor possession of marijuana, having physical control of a motor vehicle while under the influence/driving under suspension, and criminal damaging. Finally, he was assessed three points for his 2014 conviction in the Montgomery County Court of Common Pleas for arson and having weapons while under disability for which he was imprisoned for eighteen months. The PSI also indicates two points were added because the instant offense was committed while on probation to the Vandalia Municipal Court. Those total to twelve points which places Mock in criminal history category 5. The Magistrate Judge finds no incorrect application of the Guidelines in assessing these points. Mock's claim that he received six history points for misdemeanors not listed is not supported by examination of the PSI. And while convictions outside the fifteen year limit in the Guidelines are listed in the PSI, no criminal history points were assessed. Because the criminal history assessment was correct, trial counsel did not provide ineffective assistance in failing to challenge it.

In Subclaim B, Mock claims he received ineffective assistance of trial counsel when his attorney did not object to his being labeled a felon in possession of a weapon because he claims he was never informed when he completed probation on prior convictions of the penalty for being

in possession of a firearm thereafter and was also unaware of the firearms of which he was found to be in possession.

Mock's claim that he did not know about the firearms under the driver's seat is rebutted by the Statement of Facts attached to the Plea Agreement in which Mock admitted that he "possessed a firearm after having been previously convicted of a felony offense." (ECF No. 21, PageID 44). In the same Statement of Facts he admitted that the Dayton Police on July 5, 2018, found him "in possession of two stolen firearms. . ." *Id.* The Statement of Facts also lists five prior felony convictions which Mock admits. *Id.* Finally, in signing the document, he acknowledged that it was true and correct. *Id.* at PageID 45. The Statement of Facts was thoroughly discussed along with the balance of the Plea Agreement at the time Mock entered his plea (Transcript, ECF No. 34). Mock cannot now credibly claim that he did not know he possessed the two stolen firearms or that he had been previously convicted of the five listed felonies.[1]

The merits of Mock's *Rehaif* claim are discussed separately below.

In Subclaim C Mock asserts his attorney did not consult with him about appeal or file the notice of appeal he requested. Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998); *United States v. Peak*, 992 F.2d 39 (4th Cir. 1993); *United States v. Tajeddini*, 945 F.2d 458 (1st Cir. 1991); *Estes v. United States,* 883 F.2d 645 (8th Cir. 1989); *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992); *Abels v. Kaiser*, 913 F.2d 821 (10th Cir. 1990). The Sixth Circuit also held "We emphasize, of course, that a defendant's actual "request" is still a crucial element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his

---

[1] Unlike the fifteen-year limitation on prior felonies for assessment of criminal history points, there is no statute-of-limitations like limit on counting prior felonies for purposes of 18 U.S.C. § 922(g).

counsel disregards the request." *Ludwig*, 162 F.3d at 459. In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

As the Government points out, Mock provides no evidentiary support for his claim that he requested his trial attorney to file a notice of appeal; there is no affidavit attached to the Motion to Vacate which gives any detail about the circumstances in which the request to appeal was made, e.g., was it written or oral, where and when did it happen, was it before or after the appeal deadline? The Court cannot infer a request for appeal from the circumstances. Counsel had negotiated a plea agreement under which the drug charges were dismissed and there was an agreed sentence of not more than seventy months on the remaining charge. Judge Rose had actually imposed a sentence ten months below the agreed sentence and two years below the bottom of the Guideline range. Under these circumstances, the natural inference would be that Mock did not want to appeal. In the absence of some admissible evidence that Mock requested an appeal, Subclaim C is without merit and should be dismissed.

In sum, Ground One for Relief is without merit and should be dismissed.

**Ground Three: Claim Under *Rehaif v. United States***

Mock was sentenced on January 29, 2019. His time to appeal therefore expired February 12, 2019. Fed. R. App. P. 4(b)(1)(A). On June 21, 2019, the Supreme Court of United States

decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Rehaif had been convicted by a jury of possessing a firearm while being an alien illegally in the country. The jury had been instructed that the Government did not have to prove Rehaif knew he was in the country illegally and the Supreme Court found that instruction was in error.

In the course of the decision, the Court interpreted 18 U.S.C. § 924(a)(2):

> The term "knowingly" in §924(a)(2) modifies the verb "violates" and its direct object, which in this case is §922(g). The proper interpretation of the statute thus turns on what it means for a defendant to know that he has "violate[d]" §922(g). With some here-irrelevant omissions, §922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, "being an alien . . . illegally or unlawfully in the United States"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition").
>
> . . . by specifying that a defendant may be convicted only if he "knowingly violates" *§922(g)*, Congress intended to require the Government to establish that the defendant knew he violated the material elements of *§922(g)*.

139 S. Ct. at 2195-96. While *Rehaif* dealt with the status element of being an alien illegally or unlawfully in the country, the interpretation extends logically to all of the status elements in § 922(g), including being "any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;" § 922(g)(1). While there is no precedent directly in point as yet, the Magistrate Judge interprets *Rehaif* to mean that, if Mock were tried today for being a felon in possession of a firearm, the Government would have to prove beyond a reasonable doubt that he knew he had been convicted of a crime punishable by imprisonment for more than a year and the trial judge would have to instruct the jury to that effect.

However, *Rehaif* provides no relief for Mock for at least two reasons.

First of all by entering into a plea agreement and then pleading guilty pursuant to that agreement, Mock relieved the Government of any obligation to prove anything. A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a

presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

The transcript of the plea colloquy in this case shows that Judge Rose carefully discussed with Mock the effect of his plea agreement and guilty plea and determined that it was knowing, intelligent, and voluntary. By agreeing to the Statement of Facts under oath, Mock admitted that he knew he had been convicted of crimes carrying terms of imprisonment of more than a year, sufficient facts for conviction under *Rehaif*.

Second, *Rehaif* was not the law when Mock was convicted but only became the law several months later. *Rehaif* reached the Supreme Court on direct appeal by the Government from decision in the Eleventh Circuit. Thus the Court did not have occasion to discuss application of its decision to cases, like Mock's, on collateral review. The Supreme Court has a general rule by which we can determine that question, however. Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if it announces a new rule. *Graham v. Collins*, 506 U.S. 461 (1993); *Stringer v. Black,* 503 U.S. 222 (1992); *Teague v. Lane*, 489 U.S. 288 (1989).

"Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense; or 2) the rule announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Carl Green,* 144 F.3d 384, 386 (6th Cir. 1998), *citing Caspari v. Bohlen*, 510 U.S. at 396. A Supreme Court decision announces a new rule where the issue addressed was susceptible to debate among reasonable minds. *Butler v. McKellar,* 494

U.S. 407, 412-415 (1990). A new rule is "a rule that ... was not *dictated* by precedent existing at the time the defendant's conviction became final." *Saffle v. Parks*, 494 U.S. 484, 488 (1990), *quoting Teague v. Lane*, 489 U.S. 288, 301 (1989)(emphasis in original). The rule in *Crawford v. Washington,* 541 U.S. 36 (2004), is a new rule, but does not fall within the "watershed" exception to *Teague*. *Whorton v. Bockting*, 549 U.S. 406 (2007). As of February 28, 2007, the date *Whorton* was decided, the only rule the Supreme Court has identified as qualifying under the "watershed" exception is that adopted in *Gideon v. Wainwright,* 372 U.S. 335 (1963). There is no doubt that *Rehaif* announces a new rule: virtually every circuit court had ruled to the contrary. It is not a substantive rule: it does not place certain conduct outside the power of the state to punish. Instead it is a procedural rule dictating that the Government must prove a defendant acted knowingly when he or she violated § 922(g). Because *Rehaif* does not apply retroactively to cases like this one on collateral review, it does not provide a basis for relief.

Because Mock pleaded guilty and because *Rehaif* does not apply retroactively to this case, Mock's Third Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Motion to Vacate be denied. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

14

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

November 26, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).